FILED
2021 Mar-22  AM 11:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **ALLISON REYNOLDS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 4:19-cv-1931-LCB** |
| ) | |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| **COMMISSIONER,** ) | |
| | |
| **Defendant.** | |

## <u>MEMORANDUM OPINION</u>

On November 26, 2019, the Plaintiff, Allison Reynolds, filed a complaint seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed an answer on March 30, 2020. (Doc. 6). Reynolds filed a brief in support of her position on May 7, 2020 (Doc. 8), and the Commissioner filed a response on June 5, 2020. (Doc. 9). Reynolds filed a reply brief on July 2, 2020. (Doc. 10). The issue is now fully briefed and ripe for review. For the following reasons, the Commissioner's final decision is **AFFIRMED**.

### I.    Background

Reynolds protectively filed an application for supplemental security income ("SSI") on October 24, 2016, alleging disability beginning January 26, 2013. After

her claim was denied on March 2, 2017, Reynolds requested a hearing before an Administrative Law Judge ("ALJ").  That hearing took place on July 31, 2018.  Although Reynolds was informed of her right to representation, she chose to appear and testify without the assistance of counsel or other representative.  Stephen Cosgrove, a Vocational Expert ("VE") also testified at the hearing.  The ALJ subsequently issued an unfavorable decision.  Reynolds then obtained counsel and requested review of the ALJ's decision by the Social Security Appeals Council.  Reynolds submitted additional medical records to the Appeals Council on review.  However, the Appeals Council found that the new records did "not show a reasonable probability that it would change the outcome of the [ALJ's] decision." (R. 2).[1]  Accordingly, Reynolds's request was denied on October 3, 2019.  This lawsuit followed.

## II.    The ALJ's analysis

After the hearing, the ALJ issued a written opinion explaining her decision. (R. 29 – 39).  In issuing her decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration.  20 CFR 416.920(a).  The steps are followed in order and, if it is determined that the claimant is or is not

---

[1] "R" denotes the page number assigned in the administrative record filed by the Commissioner on March 30, 2020.  *See* (Docs. 6-3 to 6-9).

disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.

The first step of the five-step analysis requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit. If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case, the ALJ found that Reynolds had not engaged in substantial gainful activity since January 26, 2013. (R. at 31). Accordingly, the ALJ moved on to the second step.

At step two, ALJs must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities…." *Id.* If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends. Here, the ALJ found that Reynolds had the following severe impairments: "depressive disorder, degenerative disc disease (DDD), loss of visual acuity, degenerative joint disease (DJD) of the cervical spine, DJD and osteoarthritis of the bilateral knees, and obesity." *Id.* The ALJ found, however, that Reynolds's hypertension was not severe because it was controlled. *Id* at 32. The ALJ also found that Reynolds's paranoid personality disorder and bursitis of the shoulder were not

3

medically determinable impairments because the record contained no objective medical evidence of their existence. *Id.* citing 20 CFR 416.921 and 416.929.

The third step of the analysis requires the ALJ to determine whether the claimant's impairments or a combination thereof meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I. If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. If not, the ALJ proceeds to the next step. In this case, the ALJ found that Reynolds's impairments did not meet or equal any of the listed criteria and, therefore, proceeded to step four. (R. at 32-33).

Step four of the evaluation requires an ALJ to determine the claimant's residual functional capacity ("RFC"), and whether she has the RFC to perform the requirements of any past relevant work. 20 CFR 416.920(f). The term "past relevant work" means work performed within the last 15 years prior to the alleged date of onset. If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. In Reynolds's case, the ALJ found that she did not have the RFC to perform her past work as an institution cook. (R. at 37). Therefore, she proceeded to the final step in the evaluation process.

At the final step, the ALJ must consider whether the claimant is able to do any other work considering her RFC, age, education, and work experience. If a claimant

can do other work, she is not disabled; if not, she is disabled.  According to the ALJ, Reynolds had the RFC to perform light work as defined at 20 CFR 404.1567(b), with certain physical and mental limitations.  (R. at 34).  After hearing testimony from a VE, the ALJ determined that there were jobs existing in significant numbers in the national economy that Reynolds would be able to perform given her RFC, age, education, and work experience.  Specifically, the ALJ opined that Reynolds could perform the work of a garment sorter, small products assembler I, and office helper.  (R. 38).  The ALJ also found that these jobs existed in sufficient numbers in the national economy to provide Reynolds an employment opportunity.  Therefore, the ALJ concluded Reynolds was not disabled as defined by the Social Security Administration.

## III.   Standard of Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (internal citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must

scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec*., 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV. Reynolds's arguments

Reynolds lists three "Errors of Law" that she claims were made in her case. (Doc. 8, at 1).  The first purported error is two-fold: she contends that the Appeals Council erred by failing to review the ALJ's denial and by finding that the post-hearing medical records did not show a reasonable probability that they would change the outcome of the ALJ's decision.   Second, she asserts that the ALJ's decision to reject or give only partial weight to certain medical opinions was improper.  And third, she asserts that the ALJ's decision was not based on substantial evidence when considering the post-hearing medical records.

### A. Reynolds first argument is waived.  Her brief contains no legal analysis regarding the Appeals Council's consideration of the post-hearing medical records.

Reynolds asserts the following on the first page of her brief and at the beginning of her argument section:

> The Appeals Council erred in failing to review the denial and erred in holding that the new, material, and chronologically relevant, post[-]decision  submissions do not show a reasonable probability that it would  change  the  outcome  of  the  decision.   In   reviewing  the Commissioner's decision to deny  benefits, the court must evaluate any

6

evidence not submitted to the ALJ but instead first considered by the
Appeals Council.

(Doc. 8 at 1, 17).  However, her legal analysis largely ends there.  What follows is a
brief introduction, a page and a half of direct quotations from the ALJ's opinion, and
nearly ten pages of direct quotations from Reynolds's medical records with a few
citations to her hearing testimony.  (Doc. 8 at 1-14).  Counsel then discusses the
ALJ's findings regarding the five-step evaluation addressed above and follows that
with a section entitled "Social Security Rules." That section consists of two pages
of case law related to social security cases and nothing more.

The next section in the brief is entitled, "Argument." *Id.* at 17.  However, it
contains no legal analysis.   Rather, Plaintiff's counsel provides a short description
of the post-hearing medical records as follows:

1.  **Psychological Evaluation** 6/13/19 by Dr. June Nichols of Gadsden
    Psychological Services (R-13-17);
2.  **Mental Health Source Statement** dated 7/24/19 by Dr. June
    Nichols of Gadsden Psychological Services (R-12);
3.  Sparks Orthopedics & Sports Medicine 5/11/09-6/29/09 (R-74-81)
4.  Surgical Associates: 7/21/17 (R-70-73)
5.  Salam Free Clinic / Dr. Khurram Fareed – Physical Capacities
    Evaluation Form: 12/8/18 (R-23)

(Doc. 8 at 17) (emphasis in original).  This is followed by approximately three pages
of quotations and citations to various legal authorities discussing the duties of the
Appeals Council in considering post-hearing medical evidence.  Although the cited
case law relates to the issue at hand, there is no legal analysis applying that law to

the facts of this case.  Counsel does not explain how the new medical evidence would have changed the ALJ's decision.  For example, what impairments do the new records show?  Do these records establish a listed impairment on their own, or do they establish such an impairment when considered in conjunction with the records that were previously submitted?  If they establish or equal a listed impairment, which listing is it?  Which parts of the new records support the contention?  The brief does not say.  Rather, it appears Plaintiff's counsel reproduced pages of Reynolds's medical records along with blocks of legal authority and left it to the Court to figure out.  This is insufficient.

It is well settled that a Court is not required to make a party's argument for them, and failure to present argument on an issue can constitute its waiver.  *See e.g. Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir.2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995); *Hudson v. Norfolk Southern Ry. Co*., 209 F.Supp.2d 1301, 1324 (N.D.Ga.2001); cf. *McMaster v. United States*, 177 F.3d 936, 940–41 (11th Cir.1999)(claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint).  Because Reynolds failed to provide any legal analysis for her first issue, the Court

finds that argument to be waived.  Consequently, Reynolds is due no relief on that issue.

**B.  Reynolds is not entitled to relief on her claim that the ALJ improperly discounted the testimony of two medical experts.**

Reynolds's second argument is similarly deficient.  Like the preceding portion of her brief, this section cites several pages of caselaw related to the issue before the Court. But this time, counsel provides sparse analysis as to how the application of the principles outlined in that case law demonstrates Reynolds is entitled to relief. The argument heading for her second issue is a bit more detailed too, stating:

> The ALJ's decision to reject the only evidence by [a] mental health professional is not supported by substantial evidence.  The ALJ failed to accord proper weight to the opinion of Dr. Bodenheimer, the examining psychologist assigned by the Commissioner and to Dr. Iyer, an examining, consulting physician for the Commissioner. The ALJ improperly substituted his (sic) own opinion for that of two medical professionals.  The ALJ failed to state with at lest "some measure of clarity" grounds for [her] decision in repudiating the opinion of Dr. Bodenheimer, the examining psychologist, and Dr. Iyer, an examining, consulting physician assigned by the Commissioner.

(Doc. 8 at 19).  The section ends with the following sentence: "Because ALJ Ramsey refused to accept the opinions of the Commissioner's expert which was the only medical evidence of mental health, 'without good cause,' and failed to state with at least 'some measure of clarity' grounds for [her] decision in repudiating the opinions, the claim should be remanded."  (Doc. 8 at 22).

Review of the ALJ's opinion shows that she did not disregard or repudiate Dr. Bodenheimer's or Dr. Iyer's opinions.  Rather, she afforded only partial weight to them.  The ALJ accorded partial weight to Dr. Bodenheimer's opinion "because it [was] not a full medical source statement," and "because [Dr. Bodenheimer's] suggestion of ruling out [borderline intellectual functioning] or a neurocognitive disorder are apparently based on the claimant's missing one subtraction question even though she answered all other questions correctly." (R. 37).  Reynolds appears to argue that this determination was tantamount to the ALJ substituting her own opinion for that of Dr. Bodenheimer.  Further, Reynolds appears to contend that the ALJ's reasons for according partial weight to the opinion were not stated with the requisite clarity.

On the latter argument, Reynolds is due no relief.  In *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015), the Eleventh Circuit held:

> [T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel [v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir.2011)]. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. *Id.* "Therefore, when the ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might have supported the ALJ's conclusion.

As noted above, the ALJ specifically explained her reasons for giving partial weight to Dr. Bodenheimer's opinion, i.e., "because it [was] not a full medical source

statement, and further, because her suggestion of ruling out [borderline intellectual functioning] or a neurocognitive disorder are apparently based on the claimant's missing one subtraction question even though she answered all other questions correctly."  (R. 37).  As to Dr. Iyer's opinion, the ALJ explained that she gave it partial weight because his "opinion that [Reynolds] 'could have' impairments in certain tasks is not useful."  (R. 36).  Thus, as to each statement, the ALJ explained the weight each received, i.e., partial weight, and her reasons for assigning that weight.  The Court finds that these explanations meet the "some measure of clarity" requirement set out in *McClurkin*.

As to whether the ALJ improperly substituted her opinions for that of Drs. Bodenheimer and Iyer, Reynolds's brief is barely sufficient.  Plaintiff's counsel does not specifically identify where in her decision the ALJ substituted her own opinions for those of Drs. Bodenheimer and Iyer.  Counsel's argument appears to be that the ALJ's decision to accord only partial weight to these two opinions was because the ALJ developed a different opinion.

It is well settled that an ALJ cannot substitute her own judgment for that of medical or vocational experts.  *See Freeman v. Schweiker*, 681 F. 2d 727, 731 (11th Cir. 1982); *Hillsman v. Bowen*, 804 F.2d 1179, 1182 (11th Cir. 1986) (holding that the Commissioner cannot reject the opinions of treating physicians "because ALJ himself reached a different conclusion after viewing the medical records.").

Reynolds appears to argue that the ALJ's decision to accord only partial weight to the opinions of Drs. Bodenheimer and Iyer was based on her own opinions, which she allegedly formed after reviewing the medical records.  However, the ALJ's decision does not support that contention.

Generally, in weighing physician opinion evidence, a claimant's treating physician's opinion is entitled to more weight, and an ALJ must give good reasons for discounting a treating physician's opinion. See 20 C.F.R. § 404.1527(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  However, an ALJ may discount a physician's opinion, including a treating physician's opinion, when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding.  *See* 20 C.F.R. § 404.1527(c)(3); *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

As noted, the ALJ accorded Dr. Bodenheimer's opinion partial weight because, the ALJ found, "it was not a full medical source statement."  (R. 37). Further, the ALJ found that a single part of Dr. Bodenheimer's opinion, i.e. her recommendation of ruling out borderline intellectual functioning or a neurocognitive disorder, was "apparently based on the claimant's missing one subtraction question even though she answered all other questions correctly."  (R. 37).

12

A review of Dr. Bodenheimer's opinion reveals that she made her recommendations after stating the following:

> I am concerned that [Reynolds] attended college for 2 years but could not do some simple math. While it is possible that she has always functioned at this level, I am concerned that she has had a deterioration of functioning for unknown reasons. Therefore, it seems possible that she may have developed some mild dementia.

Thus, the ALJ's determination, i.e., Dr. Bodenheimer's recommendation to rule out two mental disorders was based on Reynolds's difficulty with basic math, is supported by the record. Reynolds does not explain how this finding is an improper basis on which to discount a medical source. However, even if this was an improper reason to accord partial weight to the opinion, it was not the only reason. The ALJ also noted that Dr. Bodenheimer's opinion was not a full medical source statement. Reynolds does not explain why or even if this is an improper reason to discount Dr. Bodenheimer's opinion.

As to Dr. Iyer, Reynolds similarly failed to articulate how the ALJ erred. In her decision, the ALJ stated that she was according partial weight to Dr. Iyer's opinion because he had opined that "the claimant 'could have' impairments of functions involving bending, lifting, pushing, pulling, and overhead activities." (R. 36), citing (R. 318). The ALJ found that Dr. Iyer's suppositional language was not useful. Again, Reynolds failed to articulate how this was improper.

Nevertheless, Reynolds would not be entitled to relief on this issue. In response, the Commissioner points out that, even if the ALJ's decision to accord partial weight to those opinions was error, such error was harmless because the ALJ took the entirety of those opinions into consideration in her determination of Reynolds's RFC. (Doc. 9, at 9). Reynolds did nothing to refute this in her reply brief. In fact, Reynolds's reply brief is an identical reproduction of pages 1-2 and pages 17-26 of her initial brief. There are no additional arguments. (*Compare* Doc. 10 *with* Doc. 8). The initial brief did not address this issue.

The ALJ determined that Reynolds had the RFC to perform light work with the following limitations:

> [S]he will be allowed a sit/stand option where she can alternate position once every 30 minutes for 5 minutes while remaining at her workstation and without increasing time off task. She will occasionally balance, stoop, crouch, and climb ramps/stairs. She will never kneel, crawl, or climb ladders/ropes/scaffolds. She will occasionally push/pull using her upper or lower extremities. She will frequently reach except overhead reach will be occasional. She will avoid frequent exposure to extreme cold/wetness/humidity. She will avoid frequent exposure to vibration. She will avoid all exposure to hazards such as unprotected heights, dangerous machinery, or vibration tool. She will perform work that does not require more than occasional far acuity. She will perform work that does not require depth perception. She will perform simple routine tasks and be provided short simple instructions. She will have casual interaction with co-workers, supervisors, [and] the general public. She will not work in close proximity to others (i.e. separate workstation). She will make simple work-related decisions and have infrequent workplace changes that will be introduced gradually. She will have supportive feedback. She will be provided a break every 2 hours. She will miss 1 to 2 days of work per month.

14

(R. 32). Dr. Bodenheimer's diagnostic impression of Reynolds noted the following: Reynolds "appeared to have some anxiety and depression;" her level of intellectual functioning was estimated to be average to low average; and that she appeared to have some traits of a personality disorder. (R. 304). The ALJ took that opinion into account in her RFC determination by finding the following: that Reynolds could perform simple routine tasks if given short simple instructions; that she have only casual interaction with others and have a separate workstation; that she could make simple work-related decisions with infrequent changes to be introduced gradually; and that she be given supportive feedback.

Similarly, the ALJ's RFC determination makes provisions for the limitations contained in Dr. Iyer's opinion. As noted, the ALJ gave only partial weight to Dr. Iyer's finding because he stated that Reynolds "'could have' impairments of functions involving bending, lifting, pushing, pulling, and overhead activities." (R. 36). The Court finds that the extensive physical limitations in the ALJ's RFC fully take that opinion into account. Thus, even though the ALJ stated that she gave only partial weight to Dr. Bodenheimer's and Dr. Iyer's opinions, her RFC determination gave them full effect. Accordingly, Reynolds is not entitled to relief on this issue.

**C. Reynolds is not entitled to relief based on her contention that consideration of her post-hearing medical records would have changed the outcome of the proceedings.**

Finally, Reynolds contends remand is necessary because, she says, "the ALJ decision was not based on substantial evidence when the submissions to the Appeals Council are considered." (Doc. 8, at 22). Implicit in this assertion is a concession that there is substantial evidence to support the ALJ's decision based on the records that were provided to her at the hearing. As in Reynolds's first argument, her brief quotes several cases for her proposition but is devoid of any legal analysis applying the facts of her case to those propositions. Counsel does not assert that the records establish any particular impairment. Nor does he specifically explain how any of the records would have changed the outcome of the ALJ's decision. Rather, he provides a conclusory statement followed by a few pages of case law. This argument is deficient for the same reasons discussed in section IV(A) supra. Therefore, the argument is waived, and Reynolds is due no relief on the issue.

The Court notes that Reynolds also appears to pivot to a fourth argument midway through the section on the third argument. Here, Reynolds contends the VE's testimony was deficient insofar as it related to her ability to perform certain work. According to Reynolds, the VE's testimony "was not based on a correct or full statement of [Reynolds's] limitations and impairments." (Doc. 8 at 24). Reynolds asserts that the ALJ's hypothetical question to the VE assumed an ability to perform work at the light exertional level. However, the testimony that Reynolds cites in her brief directly refutes that. Although the ALJ, in her first hypothetical,

16

assumed "an individual of the claimant's age, education, and work experience at the light exertional level" she went on, in the same sentence, to list several limitations. (Doc. 8 at 24) (quoting (R. 64)).  In fact, the VE's response to the first hypothetical was that a person with those limitations would *not* be able to perform Reynolds's past work.  Reynolds mentioned nothing in her brief about the two additional hypotheticals posed by the ALJ to the VE.  Accordingly, Reynolds is due no relief on this issue.

## V.    Conclusion

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.  A final order will be entered separately.

   **DONE** and **ORDERED** March 22, 2021.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE